UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:09-CV-1417-G |
| EMPLOYERS DIRECT HEALTH, INC., ET AL., | ) ) ) | **ECF** |
| Defendants. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the court is the motion of the plaintiff, North Carolina Mutual Life

Insurance Company ("NCMLIC"), for a temporary restraining order ("TRO") and a

preliminary injunction.  For the reasons discussed below, the motion is denied.

I.  <u>BACKGROUND</u>

NCMLIC is an insurance company located in the state of North Carolina.

Complaint, Motion for Temporary Restraining Order, and Motion for Preliminary

Injunction ("Motion") ¶ 10.  NCMLIC sells and administers insurance policies

outside the state of North Carolina, using third party administrators to help it do so. *Id.* ¶ 12.  One of the defendants, Employers Direct Health, Inc. ("EDH"), was one such third party administrator.  *Id.* ¶ 13.  Between 2001 and 2009, EDH sold and administered insurance policies for NCMLIC in Texas.  *Id.* ¶ 14.  EDH's agreement with NCMLIC provided that EDH would deposit all premiums and return premiums EDH received by virtue of its acting as an administrator for NCMLIC in a fiduciary bank account located in North Carolina.  *Id.* ¶ 16.

In 2005, NCMLIC discovered that EDH had embezzled more than five million dollars from NCMLIC between 2002 and 2005 by withholding portions of premiums due to NCMLIC.  *Id.* ¶¶ 17-18.  EDH admitted to misappropriating these funds.  *Id.* ¶ 19.  To remedy the situation, the two parties executed a promissory note, whereby EDH agreed to repay NCMLIC $5,091,071.73 over a three year period, with a final balloon payment due on March 1, 2009.  *Id.* ¶ 22.  The note allowed EDH to make monthly payments of $25,000 from September of 2006 through February of 2009, with interest commencing on August 1, 2007 at a rate of 4% annually.  *Id.* ¶ 27.  The note also required EDH to make a final balloon payment on March 1, 2009 equal to the balance of any principal and interest then outstanding.  *Id.* ¶ 28.  EDH made the monthly $25,000 payments, but on March 1, 2009, there remained an outstanding balance of $889,000.00.  *Id.* ¶¶ 29-30.  EDH did not make the final balloon payment

on March 1, 2009.  As a result, NCMLIC contends EDH now owes $889,000.00 with interest, as well as an 18% penalty for late payment.  *Id.* ¶¶ 33, 36.

On August 25, 2006, NCMLIC entered into a separate pledge agreement with another defendant, Mouzon Bass, III ("Bass"), the president of EDH.  *Id.* ¶ 86.  This agreement gave NCMLIC a 49% security interest in stock owned by Bass.  *Id.*  The agreement prohibits Bass from withdrawing, selling, assigning, transferring, pledging, or otherwise encumbering this 49% stock interest.  *Id.* ¶ 87.  The agreement further provides that NCMLIC is entitled to take possession of the stock if EDH defaults on its promissory note to NCMLIC.  *Id.* ¶ 88.  NCMLIC asserts a claim against Bass, arguing that it is entitled to an order transferring title in the stock from Bass to NCMLIC.  *Id.* ¶ 93.

NCMLIC has also filed suit against the MK Family Partnership, Ltd. ("the Partnership").  Just like Bass, the Partnership entered into a pledge agreement with NCMLIC, giving it a security interest in 49% of common stock owned by the Partnership in EDH, 49% of the common stock owned by the Partnership in another corporation, and all the common stock owned by the Partnership in another company.  *Id.* ¶ 99.  This pledge agreement also prohibits the Partnership from withdrawing, selling, assigning, transferring, pledging, or otherwise encumbering the pledged stock without NCMLIC's written consent.  *Id.* ¶ 100.  The agreement entitles NCMLIC to take possession of the pledged stock should EDH default on its

- 3 -

promissory note to NCMLIC.  *Id.* ¶ 101.  Thus, NCMLIC also seeks to transfer the

title in the pledged stock from the Partnership to itself.  *Id.* ¶ 106.

NCMLIC now seeks a TRO and preliminary injunction.  It argues that if the

court denies this motion, Bass and the Partnership will liquidate, transfer, or

otherwise encumber the pledged stocks, making them unavailable to NCMLIC.

II.  ANALYSIS

A.  Legal Standard for a Temporary Restraining Order

To obtain a temporary restraining order or preliminary injunction, a plaintiff

must show the following:  (1) there is a substantial likelihood of success on the

merits; (2) there is a substantial threat that the plaintiff will suffer irreparable injury if

the injunction is denied; (3) the threatened injury outweighs any damage that the

injunction might cause the defendant; and (4) granting the injunction will not

disserve the public interest.  *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th

Cir. 1999).  The decision to grant or deny injunctive relief is left to the sound

discretion of the district court.  *Mississippi Power & Light Company v. United Gas Pipe

Line Company*, 760 F.2d 618, 621 (5th Cir. 1985).  Such relief is an extraordinary

remedy which should only be granted if the movant has clearly carried its burden of

persuasion on each of the four factors.  *Id.*; *Allied Marketing Group, Inc. v. CDL

Marketing, Inc.*, 878 F.2d 806, 809 (5th Cir. 1989) (citations omitted).

B.  <u>The Second Element:  Irreparable Injury to the Movant</u>

The court will first address the second element:  whether NCMLIC can

establish that it will suffer an irreparable injury if the court denies its motion.  Under

Fifth Circuit law, an irreparable injury is one that cannot be remedied by an award of

economic damages.  *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328,

338 (5th Cir. 1981).  "Mere injuries, however substantial, in terms of money, time

and energy necessarily expended in the absence of a stay, are not enough.  The

possibility that adequate compensatory or other corrective relief will be available at a

later date, in the ordinary course of litigation, weighs heavily against a claim of

irreparable harm."  *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975) (internal

citations and quotations omitted).  Although a finding of irreparable injury may be

appropriate if the dollar value of any loss is especially speculative, *Allied Marketing*

*Group*, 878 F.2d at 810 n.1, that is not the case here.  The dollar amount NCMLIC

seeks is set in stone.  Although the court's denial of this TRO may force NCMLIC to

wait and spend more time and energy in order to collect the $889,000 plus interest

and late fees, the Fifth Circuit has held that such inconveniences do not constitute

irreparable harm.  *Morgan*, 518 F.2d at 240.

In short, even if, as NCMLIC fears, Bass and the Partnership whisk the

pledged stock away so that the plaintiff cannot reach it, the harm to NCMLIC will be

purely pecuniary.  Under Fifth Circuit law, the risk of such harm is not enough to warrant a TRO.

### III.  <u>CONCLUSION</u>

For the reasons discussed below, the plaintiff's motion for a TRO and preliminary injunction is **DENIED**.

**SO ORDERED**.

August 3, 2009.

_A. Joe Fish_ _____

**A. JOE FISH**
**Senior United States District Judge**